# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**DONALD IRWIN,**

        **Plaintiff,**

v.                                          Civil Action 2:18-cv-1628
                                            Judge George C. Smith
                                            Magistrate Judge Jolson

**COMMISIONER OF
SOCIAL SECURITY,**

        **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Donald Irwin, brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB"). For the reasons set forth below, it is **RECOMMENDED** that Plaintiff's Statement of Errors (Doc. 10) be **OVERRULED**, and that judgment be entered in favor of Defendant.

## I.     BACKGROUND

Plaintiff filed his application for DIB on December 14, 2015, alleging that he was disabled beginning January 9, 2015. (Doc. 7, Tr. 221–24). After his application was denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a hearing on May 11, 2018. (Tr. 36–67). On June 13, 2018, the ALJ issued a decision denying Plaintiff's application for benefits. (Tr. 16–27). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–6).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on December 10, 2018 (Doc. 1), and the Commissioner filed the administrative record on March 1,

2019 (Doc. 7). Plaintiff filed his Statement of Errors (Doc. 10), and Defendant filed an Opposition (Doc. 12), and no reply was filed. Thus, this matter is now ripe for consideration.

Below, the ALJ found that Plaintiff meets the insured status through December 31, 2020, and had not engaged in substantial gainful employment since January 9, 2015, the alleged onset date. (Tr. 18). The ALJ determined that Plaintiff suffered from the following severe impairments: diabetes mellitus; peripheral neuropathy; rheumatoid arthritis; mild osteoarthritis of the fingers, bilaterally; degenerative disc disease; autoimmune blistering disorder (pemphigus foliaceus); asthma; bladder impairment; venous insufficiency and obesity. (*Id.*). The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination, met or medically equaled a listed impairment. (Tr. 19).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except occasional foot controls, bilaterally; frequent balancing and stooping; occasional crawling, crouching, kneeling and climbing ramps and stairs, but no ladders, ropes or scaffolds; frequent handling and fingering with the upper extremities; frequent exposure to extreme heat and cold, wetness, humidity and irritants such as fumes, odors, dust and gases; avoid use of moving or hazardous or heavy machinery and exposure to unprotected heights; and work allowed off-task seven percent of the day.

(Tr. 20).

## II.    STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health &*

*Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

### III. DISCUSSION

Plaintiff has raised one assignment of error to the Court: That the Commissioner "failed to properly address [his] documented venous insufficiency to determine the impact of that impairment on his ability to perform work activities." (Doc. 10). Because that failure was "outcome-determinative," Plaintiff argues, this case should be remanded. (*Id.*) In support of his claim, Plaintiff asserts that the ALJ improperly evaluated the opinions of Ellen Offut, MD, and Jeffrey Haggenjos, DO, who was Plaintiff's treating physician. More generally, Plaintiff appears to argue that because his venous insufficiency was determined to be "severe," greater limitations in the RFC were required so substantial evidence does not support the ALJ's decision.

#### A. Dr. Offut's Opinion

In September 2016, Dr. Offutt examined Plaintiff for disability purposes. (Tr. 742–750). In her report, Dr. Offut noted that Plaintiff has "ankle swelling every day," "2+-3+ pitting edema with varicosities in his legs," and "feet with venous insufficiency and pooling in his feet." (Tr. 743, 744). Dr. Offutt examined Plaintiff and reported that he had no tenderness, warmth, redness, swelling, laxity or crepitus in his lower extremities. (Tr. 744). Dr. Offutt also described Plaintiff as having normal range of motion and full muscle strength with no atrophy in his lower extremities (Tr. 747–50). She further indicated that Plaintiff could walk in his heels and toes, perform tandem walking, and stand on each foot without difficulty. (Tr. 745).

In evaluating Dr. Offut's opinion, the ALJ explained:

> The undersigned considered the opinion of Ellen J. Offutt, MD, a licensed physician who examined the claimant at the request of the Bureau of Disability Determination. Her opinion, set forth in Exhibit 27F, is the result of her own observations, examinations, muscle testing, and review of the medical evidence. Dr. Offut opined that the claimant would be "...mildly to moderately impaired..." in work-related abilities; yet, did not offer vocationally relevant terms or limits of what the claimant could do despite his impairments. Therefore, the undersigned gives this opinion partial weight, but only insofar as it can be considered consistent with the above provided residual functional capacity.

(Tr. 24).

Plaintiff claims that the RFC that the ALJ crafted did not accommodate the restrictions that Dr. Offutt recommended. But a review of Dr. Offutt's report shows that her physical examination findings support the ALJ's RFC determination. For instance, Dr. Offutt opined that Plaintiff's "ability to perform work-related activities such as bending, stooping, lifting, walking, crawling, squatting, carrying and traveling as well as pushing and pulling heavy objects is at this time at least mildly to moderately impaired." (Tr. 746). Along these lines, the ALJ limited Plaintiff in the following ways: walking (6 of 8 hours), lifting, carrying, pushing and pulling (no more than 10 pounds frequently and 20 pounds occasionally stooping (frequently), crouching (occasionally). (Tr. 20). Plaintiff has not explained with any specificity how these limitations are inconsistent or less restrictive than Dr. Offutt's evaluation of Plaintiff's abilities.

In addition, Dr. Offutt did not indicate specific residual functional capacity limitations due to venous insufficiency that would support Plaintiff's disability allegations. *See McGee v. Comm'r of Soc. Sec.*, No. 2:15-cv-894, 2016 WL 3020939, *3 (S.D. Ohio May 24, 2016) ("'[A] lack of physical restrictions constitutes substantial evidence for a finding of non-disability.'") (quoting *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 91, 596 (6th Cir. 2005)). Given all of this, the Undersigned cannot conclude that the ALJ improperly considered Dr. Offut's opinion.

4

### B. Dr. Haggenjos' Opinion

Plaintiff also challenges how the ALJ evaluated Dr. Haggenjos' opinion. Because Dr. Haggenjos was Plaintiff's treating physician, two related rules govern how the ALJ was required to analyze his opinion. *Dixon v. Comm'r of Soc. Sec.*, No. 3:14-cv-478, 2016 WL 860695, at *4 (S.D. Ohio Mar. 7, 2016). The first is the "treating physician rule." *Id.* The rule requires an ALJ to "give controlling weight to a treating source's opinion on the issue(s) of the nature and severity of the claimant's impairment(s) if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 384 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527(c)(2)) (internal quotation marks omitted).

Closely associated is "the good reasons rule," which requires an ALJ always to give "good reasons . . . for the weight given to the claimant's treating source opinion." *Dixon*, 2016 WL 860695, at *4 (quoting *Blakely*, 581 F.3d at 406 (alterations in original)); 20 C.F.R. § 404.1527(c)(2). In order to meet the "good reasons" standard, the ALJ's determination "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Cole*, 661 F.3d at 937. The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (internal citation and quotation marks omitted). The treating physician rule and the good reasons rule

together create what has been referred to as the "two-step analysis created by the Sixth Circuit."

*Allums v. Comm'r of Soc. Sec.*, 975 F. Supp. 2d 823, 832 (N.D. Ohio 2013).

The ALJ gave little weight to Dr. Haggenjos' opinion, explaining:

> As for the opinion evidence, the undersigned considered the opinions of the claimant's treating source, Jeffrey Haggenjos, MD (Exhibits 13F/3; 22F; 23F/3; 41F). First, Dr. Haggenjos offered a number of statements providing the claimant is "unable to work" and is "unable to perform substantial gainful activity" (Exhibits 13F/3; 23F/3; 41F). The opinions as to the claimant's employability are entitled to no weight. These opinions are inappropriate and unacceptable in this context, as the regulations state that the final responsibility for determining if a claimant is "disabled" or "unable to work" is reserved for the Commissioner. The opinions as to the claimant's employability are inconsistent with the objective medical evidence, as discussed above. At Exhibit 22F/ 1-2, Dr. Haggenjos completed a representative supplied "Residual Functional Capacity Questionnaire" indicating in part that the claimant could only walk a half of a block, slow and stand and/or walk for less than two hours, and rarely lift up to 20 pounds. Additionally, Dr. Haggenjos proposes that the claimant needs to elevate his legs with prolonged sitting, at least 20 percent of the time, needs a sit/stand option and he would be absent more than four days a month. While Dr. Haggenjos is the claimant's primary provider, such limits appear to rely quite heavily on the subjective reports of limitations provided by the claimant and appears to be an overestimation of claimant's limitations. This most significantly due to fact that while Dr. Haggenjos suggests such limitations, his notes do not offer support such limitations. He typically notes the claimant's complaints and prescribes medications, however, he does not significant or persistent abnormalities found on examination (see e.g. Exhibits lOF; 13F; 23F; 28F; 30F; 33F; 40F). It is particularly notable that during the visit one month before this form was completed, Dr. Haggenjos noted the claimant to have an essentially unremarkable physical examination, with the exception of an elevated blood pressure reading and some decreased breath sounds, including the claimant being in no acute distress, and exhibiting no edema and no rashes or lesions noted (Exhibit 22F/8). On the visit when Dr. Haggenjos completed the form at the claimant's request, he noted the claimant to have an unremarkable physical examination; including being normotensive, with no edema or skin abnormalities, though he did have some decreased breath sounds (Exhibit 22F/ 15, 19). This would not be expected if the claimant were supportably restricted as Dr. Haggenjos proposes. Therefore, the undersigned gives Dr. Haggenjos' opinion little weight.

(Tr. 23–24).

The Undersigned concludes that the ALJ complied with applicable regulations and offered sufficient reasons for giving Dr. Haggenjos' opinion little weight. For instance, the ALJ noted that

6

Dr. Haggenjos failed to obtain diagnostic testing to support Plaintiff's degree of venous insufficiency, and the doctor's opinion appeared to rely heavily on Plaintiff's own reports of his limitations. *See Sims v. Comm'r of Soc. Sec.*, No. 09–5773, 2011 WL 180789, at *3 (6th Cir. Jan.19, 2011) ("The ALJ correctly noted that Dr. Spencer's conclusory opinion about plaintiff's ability to work was based largely on plaintiff's subjective complaints and was not supported by other medical evidence in the record."). Significantly, Dr. Haggenjos reported that, with the exception of an elevated blood pressure reading and some decreased breath sounds, Plaintiff had mostly unremarkable physical examinations, including Plaintiff being in no acute distress and exhibiting no edema or skin abnormalities. (*See, e.g.*, Tr. 24, 543–45, 558–62, 696–726, 775–835, 902–08, 1130–37). Indeed, on the visit when Dr. Haggenjos completed the form containing the elevation restriction, he reported unremarkable physical examination findings with no edema or skin abnormalities. (Tr. 24, 691). So the ALJ had reason to discount Dr. Haggenjos' opinion that Plaintiff needed to elevate his legs 20% of the time. In sum, the ALJ provided good reasons for his analysis of Dr. Haggenjos' opinion.

### C. Substantial Evidence

More generally, Plaintiff argues that substantial evidence does not support the RFC because more restrictions were needed to accommodate his intravenous insufficiency. The Undersigned disagrees.

The ALJ found that Plaintiff had a severe venous insufficiency impairment and accounted for the impairment by limiting Plaintiff to light work that involved "occasional foot controls, bilaterally; frequent balancing and stooping; occasional crawling, crouching, kneeling, and climbing ramps and stairs, but no ladders, ropes or scaffolds; frequent handling and fingering with the upper extremities; frequent exposure to extreme heat and cold, wetness, humidity, and irritants

7

such as fumes, odors, dust, and gases; no use of moving or hazardous or heavy machinery; and no exposure to unprotected heights. (Tr. 20). Additionally, Plaintiff would be allowed off-task 7% of the day. (*Id.*).

In support of this RFC, the ALJ observed that the medical evidence revealed that, on several occasions, Plaintiff had no edema or tenderness in his lower extremities. (Tr. 419, 422, 545, 561, 565, 567, 680, 686, 702, 710, 744, 805, 829, 839, 1040, 1132). Similarly, physical examinations findings also showed that Plaintiff generally had normal range of motion and muscle strength throughout his lower extremities. (Tr. 567, 747–50, 839, 848, 855, 864), and medical providers noted that he had a normal gait. (Tr. 22, 461, 504, 566, 743, 745, 895). And even when Plaintiff was noted to have an antalgic gait, he still did not require an ambulatory aid. (Tr. 509, 670, 679, 807).

The ALJ also relied on the expert opinion of Dr. Gallagher, the state agency physician at the reconsideration level. (Tr. 21–25). In September 2016, Dr. Gallagher reviewed the evidence and opined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; could stand and/or walk about 6 hours in an 8-hour workday; could sit about 6 hours in an 8-hourworkday; had limited ability to push and/or pull with his lower extremities; could occasionally kneel, crouch, crawl, and climb; and needed to avoid concentrated exposure to extreme temperatures, wetness, humidity, fumes, odors, dusts, gases, and poor ventilation, etc. (Tr. 98–99). The ALJ reasonably gave the state agency opinion significant weight. (Tr. 20, 25). The ALJ properly relied on the state agency opinion because, as the regulations provide, state agency medical consultants are "highly qualified" physicians and "experts" in the Social Security disability evaluations. 20 C.F.R. §§ 404.1513a; 404.1527(e); *see also Cox v. Comm'r of Soc. Sec.*, 295 F. App'x 27, 35 (6th Cir. 2008) ("This Court generally defers to an ALJ's decision to give more weight to the opinion of

one physician than another where, as here, the ALJ's decision is supported by evidence that the rejected opinion is inconsistent with the other medical evidence in the record."). There is no error in an ALJ's decision to rely on a non-examining doctor's opinion. *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). The RFC that the ALJ fashioned was consistent with Dr. Gallagher's opinion.

In sum, the ALJ properly considered all the opinions, with the other evidence of record, including Plaintiff's treatment history and the objective medical evidence, and substantial evidence supports the RFC.

## IV. CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's Statement of Errors (Doc. 10) be **OVERRULED**, and that judgment be entered in favor of Defendant.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of

the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

    IT IS SO ORDERED.

Date: September 3, 2019                                             /s/ Kimberly A. Jolson
                                                                                 KIMBERLY A. JOLSON
                                                                                 UNITED STATES MAGISTRATE JUDGE